**WOODMEN ACCIDENT & LIFE INSUR-ANCE COMPANY, a Nebraska corporation, Plaintiff-Counterdefendant-Appellee,**

v.

**Charles P. BRYANT, individually and as guardian for Robert L. Bryant, Defendants-Counterclaimants-Third Party Plaintiffs-Appellants,**

v.

**FIRST NATIONAL BANK & TRUST COMPANY OF LINCOLN, a national banking association, Third Party Defendant-Appellee.**

Nos. 84–1308, 84–1834.

United States Court of Appeals, Tenth Circuit.

March 3, 1986.

Paul R. Caldwell (Jeff Foster McElroy with him on briefs), of Caldwell, Lenssen, Mandel & Jesmer, Santa Fe, N.M., for defendants, counterclaimants, third party plaintiffs-appellants.

William S. Dixon (Ellen G. Thorne with him on briefs), of Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, N.M., for plaintiff-counterdefendant-appellee.

Before McKAY and JOHN P. MOORE, Circuit Judges, and WEST, District Judge.*

McKAY, Circuit Judge.

Charles Bryant, a citizen of New Mexico, purchased a major medical policy from Woodmen Accident & Life Insurance Company in 1979. This policy did not provide coverage for institutional treatment of mental or emotional illness. In March of 1981, Mr. Bryant, at the suggestion of Woodmen's agent, Mr. Jackson, changed insurance policies by applying for membership as a participant in a joint employer's trust. Under this arrangement, a master insurance policy is issued to the trust. Employers with fewer employees than would qualify for group insurance by themselves join the trust to obtain group insurance benefits. Under the master policy issued to the trust, policy number 3636, institutional treatment of mental and emotional illness was covered if the institution met the policy's definition of "hospital," which

---

* Honorable Lee R. West, United States District Judge for the Western District of Oklahoma, sitting by designation.

required, *inter alia,* facilities on the premises for diagnoses and surgery.

In September of 1981, Mr. Bryant placed his son, Robert, who was having behavioral problems, in the St. Francis Boys' Home. After Robert was admitted to St. Francis, Mr. Bryant contacted Mr. Jackson who told Mr. Bryant to bring him the bill and it would be "taken care of." Record, vol. 4, at 160; vol. 3, at 68. A few months later, Woodmen declined benefit payments. In April of 1982, policy 3636 was discontinued and a new policy, number 4036, was issued to the trust for the period of April 1, 1982 to March 31, 1983. Mr. Bryant renewed his membership in the trust.

In September, 1982, Woodmen brought a declaratory judgment action to determine whether the expenses incurred by Robert at St. Francis were reimbursable under either master policy issued by Woodmen to the trust. Mr. Bryant then counterclaimed against Woodmen for fraud, breach of contract, bad faith dealing and recission. Woodmen moved for summary judgment on the issue of its liability for the expenses Mr. Bryant's son incurred at St. Francis and later moved for partial summary judgment on several issues regarding Mr. Bryant's multiple counterclaims. The trial court granted Woodmen's initial motion for summary judgment, finding Woodmen not liable for the St. Francis expenses. Regarding Woodmen's motion for partial summary judgment, the trial court held: (1) the question of whether Mr. Bryant could claim continuing coverage under policy 3636 after its termination was moot; (2) Woodmen was entitled to summary judgment on Mr. Bryant's claims of fraud and breach of good faith; and (3) Mr. Bryant could not recover consequential damages for mental distress and economic loss resulting from Woodmen's alleged breach of contract or punitive damages related to Woodmen's alleged bad faith. These rulings, which the trial court certified pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, present the issues on appeal in case number 84–1308.

## I. *Coverage Under the Policy*

Resolution of the issue whether Woodmen is liable for the expenses incurred by Robert Bryant at the St. Francis Boys' Home hinges upon whether that facility is a "hospital" under the terms of policy 3636. The policy contains this definition of the term "hospital":

> "Hospital" means a legally constituted institution for the care and treatment of sick and injured persons providing facilities on the premises for diagnosis, and surgery, and providing twenty-four (24) hour nursing service and medical supervision. In no event, however, shall a "hospital" include an institution specializing in the treatment of mental illness or emotional disorders except for a private psychiatric hospital accredited by the Joint Commission on Accreditation of Hospitals, or an institution or that part of an institution which is a rest home, nursing home, convalescent home, home for the aged, a hotel or a motel.

Record, vol. 1, at 273.

Appellants contend that this definition is ambiguous because it is unclear whether the second sentence of the definition further limits what may constitute a "hospital" for institutions specializing in the treatment of mental illness or emotional disorders or whether the second sentence overrides the first sentence.

Under New Mexico law, whether an insurance contract is ambiguous presents a question of law. *Wiseman v. Arrow Freightways, Inc.,* 89 N.M. 392, 394, 552 P.2d 1240, 1242 (Ct.App.), *cert. denied,* 90 N.M. 9, 558 P.2d 621 (1976). Notwithstanding our duty to construe insurance policies liberally in favor of the insured and strictly against the insurer, *Foundation Reserve Insurance Co. v. McCarthy,* 77 N.M. 118, 120, 419 P.2d 963, 964 (1966), we will not force unusual or unnatural meanings from plain words to create an ambiguity when no ambiguity exists. *Horn v. Lawyers Title Insurance Corp.,* 89 N.M. 709, 712, 557 P.2d 206, 209 (1976).

■ Turning to the Woodmen policy, the record unequivocally demonstrates that the

St. Francis Boys' Home is not a hospital under the first sentence of the policy's definition of the term. That sentence requires that a "hospital" provide "facilities on the premises for diagnosis, and surgery...." Record, vol. 1, at 273. There is no surgical facility at the St. Francis Boys' Home. In response to Woodmen's request for an admission of fact that St. Francis had no on-premises surgical facilities, appellants responded: "It is admitted that St. Francis Boys' Home, Inc., Salina, Kansas, does not itself maintain permanent facilities for surgery. However, St. Francis does have surgery contracts with area hospitals." Record, vol. 2, at 450. Additionally, Leonard Wood, the comptroller at St. Francis for eleven years, testified that St. Francis had no surgical facilities, no x-ray equipment, no anesthesia facilities, no laboratory, no pharmacy and no nursing service on the premises. Record, vol. 5, at 4, 21–23. St. Francis's contracting with local hospitals and physicians for medical care for boys at the facility does not meet the policy's requirement that surgical facilities be "on premises." *See Kravitz v. Equitable Life Assurance Society*, 453 F.Supp. 381, 385 (E.D.Pa.1978); *Taylor v. Phoenix Mutual Life Insurance Co.*, 453 F.Supp. 372, 379 (E.D.Pa.1978); *Halbert v. Prudential Insurance Co.*, 436 F.Supp. 543, 548 (E.D.Tex.1977).

The second sentence does nothing to support the appellants' claims for coverage. It simply states, "In no event, however, shall a "hospital" include ...," and then describes several types of excluded facilities. Record, vol. 1, at 273. Thus, the second sentence merely adds a limitation to the first sentence; it does not override or lessen any previously stated requirements.

## II. *Doctrine of Reasonable Expectations*

■ Appellants next contend that the doctrine of reasonable expectations mandates that coverage be extended under policy 3636. They rely on the New Mexico Supreme Court's decision in *Pribble v. Aetna Life Insurance Co.*, 84 N.M. 211, 501 P.2d 255 (1972). In *Pribble*, an Aetna agent promised that the policy at issue would cover the insured's medical expenses after two other policies had been fully used. A previous representation by the same Aetna agent had been honored by the company. Aware of this precedent and in reliance on the agent's specific promise about coverage of his medical care, the insured incurred substantial additional medical bills. Aetna then denied coverage. The New Mexico Supreme Court reversed summary judgment for the insurer, finding a genuine issue of material fact about the authority of the Aetna agent to revise the policy.

We conclude that *Pribble* is distinguishable from the instant case because the facts here do not give Mr. Bryant a reasonable expectation of coverage of the expenses incurred by his son. Nothing in the record suggests that Mr. Bryant placed Robert at St. Francis in reliance upon representations made by Woodmen or its agents. Indeed, Mr. Bryant had no conversations with his agent, Mr. Jackson, about Robert's treatment until after Robert had been admitted to St. Francis. Record, vol. 4, at 160. By that time, Mr. Bryant had already agreed to maintain his son at St. Francis for at least a school year and to pay for his son's expenses. Moreover, in the discussions between Mr. Jackson and Mr. Bryant, Mr. Jackson said nothing to Mr. Bryant about eligible medical expenses or about psychiatric care benefits. Mr. Bryant contends that a reasonable expectation arose because Mr. Jackson represented that policy 3636 was far superior to the major medical policy from which Mr. Bryant converted in 1981. This contention is without merit. The initial major medical policy did not cover *any* institutional treatment for mental and nervous conditions; accordingly, if Mr. Bryant formed any expectation based on this conversation, it had to be that policy 3636 provided no in-patient psychiatric coverage whatsoever. We conclude that Mr. Bryant can claim no coverage under that policy on the basis of the doctrine of reasonable expectations.

In light of our conclusion that policy 3636 provided no coverage for the care rendered at St. Francis, Mr. Bryant's argument that he is entitled to continued coverage under that policy is moot. Next, we turn to the issues raised by the trial court's rulings on the issues of fraud, bad-faith dealing, damages from emotional distresss and economic loss, and punitive damages.

### III. *Fraud*

■ Count 1 of Mr. Bryant's counterclaim alleges that Woodmen committed fraud by advising Mr. Bryant that policy 3636 could be renewed each year and that it could never be cancelled. Because the contract did not cover the St. Francis charges, it follows that Mr. Bryant would have had no coverage for the expenses at St. Francis even if he had had the right to renew the policy each year. Woodmen is entitled to summary judgment on the fraud claim because of the absence of any injury, a necessary element of common law fraud under New Mexico law. *Sauter v. St. Michael's College,* 70 N.M. 380, 385, 374 P.2d 134, 138 (1962).

Mr. Bryant attempted to amend his counterclaim and allege that Woodmen committed further acts of fraud. However, the trial court denied the motion to amend because it was untimely, and because the defendants did not justify their untimeliness. Record, vol. 2, at 684-85. While a challenge to this denial would likely have been rejected by this court, *see DeBry v. Transamerica Corp.,* 601 F.2d 480, 492 (10th Cir.1979), Mr. Bryant did not properly raise a challenge to the court's denial in this appeal. Thus, these new claims of fraud raised by Mr. Bryant on appeal are not properly before us, and we do not consider them in our decision.

### IV. *Breach of Duty of Good Faith Dealings*

■ New Mexico recognizes the tort of bad faith delay or refusal to pay a valid claim by an insured. *State Farm General Insurance Co. v. Clifton,* 86 N.M. 757, 527 P.2d 798 (1974). Bad faith failure to pay means "a frivolous or unfounded refusal to pay." *Chavez v. Chenoweth,* 89 N.M. 423, 429, 553 P.2d 703, 709 (Ct.App.1976). Because Woodmen had no obligation to pay the St. Francis expenses, its refusal to pay, by definition, was not frivolous or unfounded.

■ Mr. Bryant argues that even if Woodmen had no duty to pay, its delay in communicating denial of payment of his insurance claim constitutes bad faith. Mr. Bryant points out that five months passed before Woodmen denied the St. Francis claim. He contends that had he known soon after admitting Robert to St. Francis that there was no insurance coverage, he could have at least attempted to transfer Robert to a hospital that did satisfy the definition of a hospital under policy 3636.

We believe *Chavez v. Chenoweth, supra,* disposes of this issue. In *Chenoweth,* the insured brought a tort claim against the insurer for delay in paying her medical expenses. The court stated:

> The claim is a tort claim for unreasonable delay in paying medical expenses under the insurance contract. Such a tort claim provides a basis for recovery if there is evidence of bad faith. Bad faith means a frivolous or unfounded refusal to pay.

89 N.M. at 429, 533 P.2d at 709 (citation omitted). Thus, it appears that even the tort of bad faith delay to pay a claim by an insurer requires that there be a "frivolous or unfounded refusal to pay." Without a showing that there is no reasonable basis for denying the claim, Mr. Bryant's claim for wrongful delay must fail.

### V. *Emotional Distress*

■ Denying Mr. Bryant's claims for emotional distress, the trial court held that emotional distress is not recoverable under a contract claim, unless the breach causes bodily harm, or unless the contract or the breach is of such a kind that serious emotional disturbance is a particularly likely result. *Restatement (Second) of Contracts* § 353 (1981). While there is no New Mexico precedent on this issue, the majority of jurisdictions agree with this position.

*See, e.g., Bolden v. John Hancock Mutual Life Insurance Co.,* 422 F.Supp. 28 (E.D. Mich.1976); *Cassady v. United Insurance Co.,* 370 F.Supp. 388, 398 (W.D.Ark.1974); *Pendleton v. Aetna Life Insurance Co.,* 320 F.Supp. 425, 432 (E.D.La.1970); *Kewin v. Massachusetts Life Insurance Co.,* 409 Mich. 401, 415–23, 295 N.W.2d 50, 52–55 (1980); *Farris v. United States Fidelity and Guaranty Co.,* 284 Or. 453, 456, 587 P.2d 1015, 1016–22 (1978) (In Banc).

Mr. Bryant argues that this case falls within one of the exceptions recognized in the *Restatement (Second)* because the alleged breach of the contract caused him to lose sleep, and this loss of sleep constitutes a bodily injury. Mr. Bryant's argument fails for two reasons. First, he did not allege any physical injury in his counterclaim. Second, the mere loss of sleep, without more, because one is worried about a bill is not bodily injury as contemplated by the *Restatement (Second)* rule. Mr. Bryant admitted he had never seen a physician or psychologist about this mental anguish. Some cases recognize that sleeplessness is an adverse physical manifestation of emotional distress, and thus it can constitute bodily harm sufficient to establish that element of damages. *See, e.g., Landreth v. Reed,* 570 S.W.2d 46 (Tex.Civ. App.1978); *Savard v. Cody Chevrolet, Inc.,* 126 Vt. 405, 234 A.2d 656 (1957). These cases, however, are factually distinguishable.

## VI. *Economic Loss*

■ The trial court denied Mr. Bryant's claim for economic loss attributable to his diversion of efforts due to emotional distress, because these damages were too remote and speculative. We agree with the trial court on this issue. *Mitchell v. Inter-mountain Casualty Co.,* 69 N.M. 150, 152, 364 P.2d 856, 857 (1961).

## VII. *Punitive Damages*

Punitive damages may be awarded in New Mexico for the bad faith denial of an insurance claim. *See State Farm General Insurance Co. v. Clifton,* 86 N.M. at 759, 527 P.2d at 800–01; *Curtiss v. Aetna Life Insurance Co.,* 90 N.M. 105, 108, 560 P.2d 169, 172 (Ct.App.), *cert. denied,* 90 N.M. 7, 558 P.2d 619 (1976). However, because Woodmen did not deny Mr. Bryant's claim in bad faith, Mr. Bryant's claim for punitive damages fails.

## VIII. *Costs*

■ In case number 84–1834, Mr. Bryant appeals from the district court's order awarding Woodmen costs in the amount of $1,857.26. Woodmen contends that we do not have jurisdiction to review the interlocutory cost order because, although Mr. Bryant obtained certification of the summary judgment orders, he failed to obtain certification of the cost order under either 28 U.S.C. § 1292(b) or Fed.R.Civ.P. 54(b).

Statutory and case law provide us with little guidance to resolve this issue. Rule 54(d) of the Federal Rules of Civil Procedure provides that "costs shall be allowed as of course to the prevailing party unless the court otherwise directs," but it does not specify a time in which the motion for costs must be made. However, because the rule speaks in terms of the prevailing party, "it is generally understood that the appropriate time for taxing costs is after a decision has been reached in the action." 10 C. Wright, A. Miller and Mr. Kane, *Federal Practice and Procedures,* § 2679, at 239 (1973); *Knighton v. Watkins,* 616 F.2d 795, 798 (5th Cir.1980).

We believe logic dictates that, unless the trial court—as part of its Rule 54(b) certification—directs taxing and *apportionment* of costs, the time for taxing costs begins to run only from the entry of what would ordinarily be a final judgment as to all parties and all issues.[1] To hold otherwise would unnecessarily complicate matters. For example, in the instant case, Mr. Bryant might succeed on his remaining

---

1. As a result of our holding, if a party seeking Rule 54(b) certification also wishes to recover costs attributable to the issues to be certified, his motion to tax costs should be part of his motion seeking Rule 54(b) certification.

claim for relief and, thus, be entitled to costs as a "prevailing party."[2] Additionally, certain costs, such as deposition costs, might have been extended to resolve issues certified pursuant to Rule 54(b) as well as the issue still pending in the trial court. We believe the trial court should have the freedom to adjust any cost awards at least until there has been a final judgment as to all parties and all issues, and we assume the trial court will consider the possibility of doing so in this case. Thus, because the trial court's judgment is not final with respect to costs, we dismiss Mr. Bryant's cost appeal.

AFFIRMED.

2. The sole issue remaining in this lawsuit is whether, as alleged in Count III of Mr. Bryant's counterclaim, Mr. Bryant can reinstate the major medical policy in effect prior to coverage under policy number 3636. Although Mr. Bryant concedes that the major medical policy would not cover the expenses incurred for treatment of Mr. Bryant's son at the St. Francis Boys' Home, his concern appears to be whether Mr. Bryant's son will be eligible for medical insurance in the future.