**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 20, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DENNIS RAY ALLEN,

      Plaintiff - Appellant,

v.

KAY LANG, in her individual capacity
and in her official capacity as Mayor of
Boynton; WILLIE G. HOPKINS, in his
individual capacity and in his official
capacity as an employee of Boynton;
CANDACE LANG, in her individual
capacity and in her official capacity as an
employee of Boynton; TOWN OF
BOYNTON,

      Defendants - Appellees.

_____

DENNIS RAY ALLEN,

      Plaintiff - Appellant,

v.

KAY LANG, in her individual capacity
and in her official capacity as Mayor of
Boynton,

      Defendant - Appellee,

and

WILLIE G. HOPKINS, in his individual
capacity and in his official capacity as an
employee of Boynton; CANDACE LANG,
in her individual capacity and in her

No. 17-7062
(D.C. No. 6:16-CV-00296-RAW)
(E.D. Okla.)

No. 18-7001
(D.C. No. 6:16-CV-00296-RAW)
(E.D. Okla.)

official capacity as an employee of
Boynton; TOWN OF BOYNTON,

    Defendants.

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **HOLMES**, and **PHILLIPS**, Circuit Judges.
_____

    Dennis Ray Allen brought claims under 42 U.S.C. § 1983, alleging violations

of his First and Fourth Amendment rights arising from his request for disclosure of

public records under the Oklahoma Open Records Act.  He also asserted a variety of

claims under Oklahoma law.  The district court granted summary judgment to

defendants on the federal claims and declined to exercise supplemental jurisdiction

over the state claims, dismissing them without prejudice.  Separately, the court

ordered Mr. Allen to pay over $12,000 in costs to one of the defendants.  Mr. Allen

appeals both rulings, and we have combined the appeals.  Exercising jurisdiction

under 28 U.S.C. § 1291, we affirm in all respects.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

## I. BACKGROUND

Mr. Allen sought public records to prove misappropriation of the funds and property of the Town of Boynton, Oklahoma, by the three individual defendants in this action: Boynton's mayor, Kay Lang; its town clerk, Candace Lang, who is Mayor Lang's step-daughter; and its water operator, Willie Hopkins, who was romantically involved with Candace Lang. The alleged misappropriations included kickbacks to Mayor Lang's husband for mowing and water services, the provision of which also involved Candace Lang and Mr. Hopkins, respectively; and the sale of two of the town's tractors to other members of the Lang family on favorable terms.

Mr. Allen alleged that Candace Lang denied his initial records request and telephoned Mr. Hopkins to come to Boynton's town hall and beat Mr. Allen because he would not take "no" for an answer. Mr. Allen left before Mr. Hopkins could arrive.

Five days later, Mayor Lang called Mr. Allen and asked him to come to her house in the afternoon to pick up the records. Mr. Allen, who described himself as "an elderly man of slight build" with a lung condition, No. 17-7062, Aplt. App., Vol. II at 209, declined because he was feeling ill. Later that day, Mayor Lang again contacted Mr. Allen and told him he could pick up the records at 6:00 p.m. at the town hall. Mr. Allen arrived at the town hall to find Mayor Lang and a member of Boynton's town board, Eloise Greer (a nonparty), present. Mayor Lang gave Mr. Allen an envelope. Mr. Hopkins then entered the Town Hall and shouted that Mr. Allen had a gun and needed "to be taken out immediately," which Mr. Allen

3

understood to mean severely beaten. *Id.*, Vol. I at 129. Ms. Greer asked Mr. Allen why he had brought a gun. Mr. Allen responded that he did not have a gun and offered to "take the stuff out of [his] pockets, if [they] want[ed him] to." *Id.* at 110–11. Mayor Lang and Ms. Greer both nodded. *Id.* at 111. Neither Mayor Lang nor Mr. Hopkins asked Mr. Allen to empty his pockets, but Ms. Greer asked him what he had in his back pockets and under his shirt. Mr. Allen said his checkbook and wallet were in his back pockets, and he pulled up his shirt to show Ms. Greer that he "didn't have anything under [his] shirt." *Id.* at 112. According to Mr. Allen, Mayor Lang said nothing during this process but nodded while Ms. Greer questioned him, *id.* at 111–13, and Candace Lang was in an adjacent hallway.

After pulling his shirt down and refilling his pockets, Mr. Allen examined the documents in the envelope. As he did so, Mr. Hopkins went into the hallway and stood staring at him. Mr. Allen told Mayor Lang that the documents were not what he had requested. Ms. Greer asked Mr. Allen to sign and date the front of the envelope and indicate that he was refusing to receive it. Mr. Allen declined to do so. Ms. Greer then moved to the hallway. As Mr. Allen started to leave, Mr. Hopkins loudly told him not to come forward but to back up. As Mr. Allen backed up into the room, Mr. Hopkins came up next to him and hit Mr. Allen, allegedly knocking him out briefly and fracturing his eye socket. Mr. Allen asked Mayor Lang to call the sheriff, but Mayor Lang said her cell phone had no power and told Mr. Allen that he would have to call himself, which he did. Candace Lang then entered the room. She told Mr. Allen he had to leave, pushed a chair underneath his legs, and pushed him

4

into the hallway.  Mr. Allen told her that she was hurting him, and he put his feet down to try to stop.  Once in the hallway, Mr. Allen got up, walked outside, got in his truck, and eventually spoke with a deputy sheriff.  The deputy declined to take Mr. Hopkins to jail because Mr. Hopkins claimed he hit Mr. Allen for head-butting him.

In the operative pleading in this case, the Second Amended Complaint, Mr. Allen theorized that Mayor Lang, Candace Lang, and Mr. Hopkins conspired to meet at the town hall so that Mr. Hopkins could administer the beating in retaliation for Mr. Allen's public-records request.  All defendants successfully moved for summary judgment on the federal claims, and the district court declined to exercise supplemental jurisdiction over the state claims.  The court also granted Mayor Lang's motion for costs in the amount of $12,413.10.

## II.  DISCUSSION

### A.    No. 17-7062

We review an order granting "summary judgment de novo, applying the same standards that the district court should have applied." *Fields v. City of Tulsa*, 753 F.3d 1000, 1008 (10th Cir. 2014) (internal quotation marks omitted).  A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[W]e examine the record and all reasonable inferences that might be drawn from it in the light most favorable to the nonmoving party." *Fields*, 753 F.3d at 1009 (internal quotation marks omitted).

5

### 1. First Amendment claim

The district court granted summary judgment on Mr. Allen's First Amendment retaliation claim because he failed to establish that he engaged in constitutionally protected activity, which is one of three elements of such a claim, *see Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000). We agree. "It is well-settled that there is no general First Amendment right of access to all sources of information within governmental control." *Smith v. Plati*, 258 F.3d 1167, 1178 (10th Cir. 2001). "Neither the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control." *Houchins v. KQED, Inc.*, 438 U.S. 1, 15 (1978) (plurality opinion)[1]; *see also Lanphere & Urbaniak v. Colorado*, 21 F.3d 1508, 1511 (10th Cir. 1994) ("[T]here is no constitutional right, and specifically no First Amendment right, of access to government records.").

We are not persuaded to the contrary by Mr. Allen's argument that *Shero v. City of Grove*, 510 F.3d 1196 (10th Cir. 2007), supports his First Amendment claim. In *Shero*, this court quoted *Houchins* for the principle that the First Amendment does not "'compel[] others—private persons or governments—to supply information,'" *id.*

---

[1] As this court has noted, *Houchins* was "a plurality opinion of a seven-member Court joined by three members," but "Justice Stewart concurred in the judgment and wrote that 'the First and Fourteenth Amendments do not guarantee the public a right of access to information generated or controlled by government' and he 'agreed substantially' with what the plurality opinion said on that topic." *Shero v. City of Grove*, 510 F.3d 1196, 1201 n.3 (10th Cir. 2007) (brackets omitted) (quoting *Houchins*, 438 U.S. at 16 (Stewart, J., concurring in the judgment)).

at 1201 (quoting *Houchins*, 438 U.S. at 11), and concluded that the plaintiff had "no First Amendment right to receive [information] packets from the City, but rather only a state right under the [Oklahoma Open Records Act]," *id.* at 1202.  The district court based its ruling on this part of *Shero*.  The portion of *Shero* Mr. Allen relies on concerned retaliation for speaking out at a public meeting, which the court concluded was "constitutionally protected activity," *id.* at 1203.  Although the denial of the information request was relevant to whether the plaintiff's "discourse with the [city] council was inhibited in any way," the *Shero* panel concluded that the denial did not have such an effect because the plaintiff remained free to express his views. *Id.* at 1204.  In reaching that conclusion, the panel in no way contradicted its holding earlier in the opinion that there is no First Amendment right to receive information from governments.

Mr. Allen also claims the district court erred in analyzing the First Amendment claim as if his conduct "was limited to the submission of an Open Records Act request, and the retaliation as if it was limited to the refusal to provide the documents."  Aplt. Opening Br. at 23.  But the retaliation claim he advanced in his Second Amended Complaint was based only on his two records requests, and the evidence he now appears to rely on in support of his argument concerns his initial confrontation with Candace Lang and improprieties that he claims the requested documents proved.  *See id.* at 3–4 (citing portions of his response to Mayor Lang's summary judgment motion maintaining that the requested records proved Mayor Lang was not qualified to serve as Mayor, the existence of a fictitious entity used to

7

funnel town money to Mayor Lang's husband, illegal transfers of town property, kick-backs to Mayor Lang and her husband, and violations of hiring protocols).  We therefore see no error in the scope of the district court's analysis.  To the extent Mr. Allen is now attempting to broaden the conduct he claims was the basis for the alleged retaliation, we generally do not consider new theories advanced for the first time on appeal, even those within the same general category as a theory presented to the district court.  *Utah Animal Rights Coal. v. Salt Lake Cty.*, 566 F.3d 1236, 1244 (10th Cir. 2009).  We see no reason to deviate from this general rule.

### 2.  Fourth Amendment claim

Mr. Allen claimed that the defendants searched, seized, and used excessive force against him in violation of the Fourth Amendment.  The district court began its analysis of this claim against the individual defendants by concluding that there was no evidence Mr. Allen was ever arrested and that he had voluntarily shown he did not have a gun.  It then ruled that the individual defendants were entitled to qualified immunity on the excessive-force component of the claim because none of them had acted under color of state law.  The court concluded that Mr. Allen had not shown that the Town of Boynton had a policy or custom of endowing its mayor, clerk, or water operator with policing powers, and that Mr. Allen had no constitutional right,

8

clearly established or otherwise, "against being punched or pushed by a civilian with no police powers," Aplt. App., Vol. II at 441.[2]

Although we affirm the district court's judgment on the Fourth Amendment claim against the individual defendants in their individual capacities, we take a slightly different analytical route. *See Brady v. UBS Fin. Servs., Inc.*, 538 F.3d 1319, 1327 (10th Cir. 2008) (stating that this court may affirm for any reason supported by the record, even if the reason was not relied on by the district court).

We begin with the alleged search. Candace Lang was not in the room when this occurred, and Mr. Allen pulled up his shirt and emptied his pockets in response to questions from Ms. Greer, a nonparty to this action, not to any requests or coercion from Mr. Hopkins or Candace Lang.[3] Hence, neither of them personally participated in the

---

[2] Granting qualified immunity on this basis was improper because "public officials enjoy qualified immunity in civil actions that are brought against them in their individual capacities and *that arise out of the performance of their duties*." *Pahls v. Thomas*, 718 F.3d 1210, 1227 (10th Cir. 2013) (emphasis added). If the individual defendants were not acting under color of state law, then the claims against them did not "arise out of the performance of their duties," and qualified immunity is inapplicable.

[3] Mr. Allen claims that while he emptied his pockets, Mr. Hopkins blocked the exit and was threatening him. Aplt. Opening Br. at 9. In support he cites an affidavit he submitted in district court in response to the summary judgment motions. *See id.* (citing Aplt. App., Vol. 2 at 244). But at his prior deposition, the first mention he made of Mr. Hopkins perhaps threatening him occurred after the search was over, when Mr. Allen opened the envelope and Mr. Hopkins retreated to the hallway and stared at Mr. Allen; and the first instance of Mr. Hopkins blocking his way occurred as Mr. Allen attempted to leave. *See* Aplt. App., Vol. 1 at 116–17. He has not acknowledged, let alone explained, this discrepancy. Although the record does not reflect if Mr. Allen was cross-examined at his deposition, the evidence in the affidavit was not new, and there was no apparent confusion in his deposition testimony. We therefore reject his later, contrary version of events. *See Franks v.*

(continued)

9

search and therefore cannot be held liable under § 1983. *See Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."). Mayor Lang supposedly nodded when Mr. Allen offered to empty his pockets, but such a trivial gesture falls short of personal participation in the process directed by Ms. Greer.[4] And assuming that Mayor Lang was Ms. Greer's supervisor, Mr. Allen has not established any of the three requirements for supervisor liability: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010).

We next conclude that state action is lacking with respect to the seizure and excessive force claims against Mr. Hopkins. Liability under § 1983 requires "deprivation of a federally protected right by . . . an actor acting under color of state law." *Schaffer v.*

---

*Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986) (explaining that we will disregard an affidavit submitted at summary judgment that contradicts the affiant's prior sworn testimony if it "constitutes an attempt to create a sham fact issue," taking into account factors including opportunity for cross-examination at prior testimony, whether later testimony is based on newly discovered evidence, and "whether the earlier testimony reflects confusion which the affidavit attempts to explain").

[4] As noted above, in his deposition testimony, Mr. Allen stated that Mayor Lang nodded when he offered to empty his pockets and as Ms. Greer questioned him. Aplt. App., Vol. 1 at 111–13. But in his later affidavit, Mr. Allen claimed Mayor Lang nodded when he asked her if he had to comply with Ms. Greer's request, *id.*, Vol. 2 at 244, and he repeats that assertion here. Because his later affidavit contradicts his deposition testimony in an apparent attempt to create triable fact issue, we reject the affidavit version. *See Franks*, 796 F.2d at 1237.

10

*Salt Lake City Corp.*, 814 F.3d 1151, 1155 (10th Cir. 2016).  "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  *Id.* at 1156 (internal quotation marks omitted). But "the fact that a tort was committed by an individual employed by the state does not, *ipso facto*, warrant attributing all of the employee's actions to the state."  *Id.* (internal quotation marks omitted).  "Rather, before conduct may be fairly attributed to the state because it constitutes action under color of state law, there must be a real nexus between the employee's use or misuse of their authority as a public employee, and the violation allegedly committed by the defendant."  *Id.* (internal quotation marks omitted).

Mr. Allen has presented no evidence that when Mr. Hopkins, the town's water operator,  prevented Mr. Allen from leaving and then hit him, he was exercising a "power possessed by virtue of state law and made possible only because [he was] clothed with the authority of state law."  *Id.* (internal quotation marks omitted).[5]  Mr. Allen contends that Mr. Hopkins can nonetheless be held liable under § 1983 because he, Candace Lang, and Mayor Lang acted jointly in a conspiracy devised by Mayor Lang to lure Mr. Allen to the town hall on the premise of providing him with the records he requested and then subjecting him to physical attack.  We disagree.

---

[5] Mr. Allen admitted as much with regard to Mr. Hopkins when he stated that "[Mr.] Hopkins had no official role in the meeting to be present, no official duty as a security officer or police officer, and . . . has since admitted his involvement was 'purely personal.'"  Aplt. App., Vol. 2 at 211.

11

Certainly, a private actor's joint action with a public official can subject the private actor to § 1983 liability under a "conspiracy approach" if "the public and private actors . . . share a common, unconstitutional goal." *Schaffer*, 814 F.3d at 1157 (internal quotation marks omitted). And by inviting Mr. Allen to the town hall to collect the records he had requested, Mayor Lang arguably engaged in state action. *See West v. Atkins*, 487 U.S. 42, 50 (1988) (explaining that "a defendant in a § 1983 suit acts under color of state law" by "abus[ing] the position given to [her] by the State"). But the evidence Mr. Allen relies on in support of his conspiracy theory is insufficient to survive summary judgment. That evidence consists of the following:

Five days before Mr. Allen was beaten, Candace Lang called Mr. Hopkins to come to the town hall and take care of Mr. Allen because he would not take "no" for an answer to his records request. On the day of the beating, Candace Lang and Mr. Hopkins went to Mayor Lang's house in the afternoon around the time Mr. Allen would have arrived if he had accepted Mayor Lang's invitation to pick up the documents there. A couple of hours before Mr. Allen arrived at the town hall, Mayor Lang asked Candace Lang via text message to "[c]all [her] now." Aplt. App., Vol. 2 at 354. Candace Lang and Mr. Hopkins showed up at the town hall soon after Mr. Allen arrived there, which was allegedly unusual because the town hall had closed at noon and they had no official business to attend to there, and it is statistically improbable that all three would converge, first at Mayor Lang's house and later at the town hall, within the time frame Mr. Allen might have been present in each location.

12

This evidence is speculative with regard to Mayor Lang's alleged role as the force behind a conspiracy to beat Mr. Hopkins and deprive him of his Fourth Amendment rights. Nothing other than mere surmise links Mayor Lang to Candace Lang's telephone call to Mr. Hopkins five days before the beating. Candace testified that on the day of the beating, she and Mr. Hopkins had driven to Tulsa to pick up some equipment for the town, and on the way back, they stopped at Mayor Lang's house to check in, which was a normal occurrence. *Id.* at 314–19. In response to an interrogatory, Mayor Lang stated that she told Mr. Allen she would be near town hall from 5:00 to 6:00 p.m. cleaning up bricks, and he could pick up the documents at that time. *Id.*, Vol. 1 at 168. Mayor Lang's text message to Candace just after 4:00 p.m. stating only "[c]all me now," *id.*, Vol. 2 at 354, says absolutely nothing about the reason for the request. Candace testified that she had declined Mayor Lang's invitation to attend the meeting with Mr. Allen at the town hall because it was after hours and did not involve an emergency situation, but Ms. Greer had agreed to attend. *Id.* at 320, 327. Sometime during the unfolding of the situation at the town hall, Candace, who was painting and working on a town cleanup a block away, received a call from Mayor Lang asking her to come to the town hall because "'something hit something,'"[6] and at the same time Ms. Greer stepped out and summoned Candace. *Id.* at 314–15, 320, 325, 332–33.

Mr. Allen has not seriously called this evidence into doubt. And as distinct from his conclusory theories about the meaning of the individual defendants' movements on

---

[6] According to Candace, the "somethings" represented words blurred by poor cell phone reception.

the day of the incident, this evidence does not permit a reasonable inference that Mr. Hopkins was present at the town hall at Mayor Lang's request and for the purpose of beating Mr. Allen because of his efforts to expose suspected corruption. Accordingly, summary judgment was warranted in favor of Mr. Hopkins on the seizure and excessive-force components of the Fourth Amendment claim for lack of state action.

We next conclude that summary judgment was also warranted on the seizure and excessive force components of this claim against Candace Lang. Arguably, Candace acted under color of law when she pushed Mr. Allen in the chair; after all, she was attempting to clear him from the office area in the town hall, where she worked, and said, "'This is why we won't allow people here after closing time. Get out.'" Aplt. App., Vol. 1 at 119–20. But a seizure in violation of the Fourth Amendment occurs when a state actor, "by means of physical force or show of authority, *terminates or restrains* [a person's] freedom of movement through means intentionally applied." *Morris v. Noe*, 672 F.3d 1185, 1192 (10th Cir. 2012) (internal quotation marks omitted) (emphasis added). And according to Mr. Allen, when Candace told him to get out, he was apparently still on the ground and replied that he could not get out. Aplt. App., Vol. 1 at 120. When he got up, Candace said "'[g]et in this chair,'" and then pushed him into the hallway. *Id.* at 121. On these facts, no reasonable juror could conclude that Candace seized Mr. Allen. Candace's action did not terminate or restrain Mr. Allen's movement but instead facilitated him leaving the building, which he had been attempting to do before Mr. Hopkins hit him. Lacking a seizure in violation of the Fourth Amendment, the excessive force claim against Candace necessarily fails. *See Graham v. Connor*,

14

490 U.S. 386, 395 & n.10 (1989) (explaining that it is a "seizure" that "trigger[s]" the Fourth Amendment protection against the use of excessive force because "the reasonableness of a particular seizure depends not only on when it is made, but also on how it is carried out" (emphasis and internal quotation marks omitted)).

Finally, our preceding analysis makes clear that Mayor Lang lacked the requisite personal participation in the actions of Mr. Hopkins and Candace Lang with respect to the seizure and excessive-force components of the Fourth Amendment claim. Summary judgment in favor of Mayor Lang on those portions of the claim was therefore warranted.

### 3. Constitutional claims against the Town of Boynton

The district court ruled that the Town of Boynton could not be held liable for the acts of the individual defendants because Mr. Allen had not provided any evidence of a town policy or custom causally linked to his injuries. To the extent Mr. Allen claimed that the three individual defendants were liable in their official capacities, his claim was in reality against the Town of Boynton. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (explaining that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office"). A municipality may be held liable under § 1983 when a plaintiff shows "the existence of a municipal policy or custom" and "a direct causal link between the policy or custom and the injury alleged." *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) (discussing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). But it cannot "be held liable where there was no underlying constitutional violation by any of its officers." *Id.* Because we have concluded that the evidence fails to establish a

15

constitutional violation by any of the individual defendants, the Town of Boynton cannot be held liable under § 1983.

**B.    No. 18-7001**

In appeal No. 18-7001, Mr. Allen challenges the district court's award of more than $12,000 in costs to Mayor Lang as the prevailing party under Fed. R. Civ. P. 54(d)(1) and 28 U.S.C. § 1920. He contends that because the district court declined to exercise supplemental jurisdiction over the state claims against Mayor Lang, he could prevail on those claims in state court, and therefore it is not possible to determine whether Mayor Lang is the prevailing party. He adds that awarding costs before the state proceedings have run their course could lead to inconsistent results in federal and state court. Finally, he argues that even if Mayor Lang is considered a prevailing party, the district court erred by not sorting out what portion of the claimed costs are attributable solely to the federal claims and assessing only those costs related to those claims. We disagree with all three contentions.[7]

Rule 54(d)(1) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Whether to grant costs to a prevailing party is within the district "court's sound discretion," but "Rule 54 creates a presumption that the district court will" do so. *Rodriguez v. Whiting Farms, Inc.*, 360 F.3d 1180, 1190 (10th Cir. 2004) (internal

---

[7] Mr. Allen also argues that if we reverse the entry of summary judgment on any of the federal claims against Mayor Lang, we must reverse the award of costs. Because we are affirming judgment on those federal claims, this argument is moot.

16

quotation marks omitted).  "The burden is on the non-prevailing party to overcome this presumption."  *Id.*  Our review is for abuse of discretion.  *Id.*

We take Mr. Allen's first argument first—that it is premature to determine whether Mayor Lang is the prevailing party.  In *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598 (2001), the Supreme Court observed that the term "prevailing party" is "a legal term of art" defined as "'a party in whose favor a judgment is rendered, regardless of the amount of damages awarded.'"  *Id.* at 603 (brackets omitted) (quoting  *Black's Law Dictionary* 1145 (7th ed. 1999)).  We have that here.  The district court entered judgment in favor of Mayor Lang on the federal claims.  Mr. Allen relies on *Buckhannon*'s holding that there must be a "material alteration of the legal relationship of the parties" in order for there to be a prevailing party, *id.* at 604 (internal quotation marks omitted).  He contends that it is too early to tell if judgment on the federal claims has altered the legal relationship between him and Mayor Lang because he could prevail on his claims in state court and obtain all the relief he seeks.  This argument overlooks a portion of *Buckhannon*'s holding that an "enforceable judgment[] on the merits" is one way to "create [that] material alteration."  *Id.*  (internal quotation marks omitted).  The district court entered a judgment in favor of Mayor Lang on the merits of the federal claims, and she can enforce that judgment by, for example, using it to estop Mr. Allen from trying to bring the same federal claims against her.  Mayor Lang is therefore the prevailing party for Rule 54(d)(1) purposes, and we reject Mr. Allen's misapplication of *Buckhannon*.

17

Further, whether Mr. Allen might prevail on his state claims in state court and obtain the damages he seeks is beside the point. In general, "the litigant in whose favor a judgment is rendered is the prevailing party for purposes of Rule 54(d)(1)." *Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1234 (10th Cir. 2001) (brackets and internal quotation marks omitted). And we have long held that "a party need not prevail on every issue to be considered a Rule 54(d) prevailing party." *Cantrell v. Int'l Bhd. of Elec. Workers*, 69 F.3d 456, 458 (10th Cir. 1995) (en banc).

Mayor Lang directs our attention to a number of courts that have ruled that a defendant is a prevailing party for Rule 54(d)(1) purposes when a district court enters judgment on federal claims and declines to exercise supplemental jurisdiction over state claims, dismissing them without prejudice, as the court did here. *See, e.g.*, *Head v. Medford*, 62 F.3d 351, 355 (11th Cir. 1995) (per curiam) (concluding that defendants who were entitled to summary judgment on federal claims were prevailing parties entitled to Rule 54(d)(1) costs despite "[t]hat the district court declined to exercise its supplemental jurisdiction under 28 U.S.C. § 1367 and dismissed all of plaintiff's remaining state law claims"); *Billy v. Curry Cty. Bd. of Cty. Comm'rs*, No. 2:13-CV-0032 MCA/LAM, 2015 WL 12990789, at *3 (D.N.M. Sept. 11, 2015) (unpublished) ("Defendants were the prevailing parties in this action. To the extent their success was incomplete because the Court declined to exercise supplemental jurisdiction over Plaintiff's state court claim after dismissing his federal claims, this does not affect the Court's decision to award . . . costs here where Defendants were overwhelmingly successful."); *accord Freeman v. Arapahoe House*, No. 13-cv-0064, 2014 WL 3864307,

18

at *6 (D. Colo. Aug. 6, 2014) (unpublished) (awarding costs to defendant after granting summary judgment on federal claims and declining to exercise supplemental jurisdiction); *Smith v. Barber*, No. Civ.A. 01-2179-CM, 2005 WL 2122347, at *1 (D. Kan. July 19, 2005) (unpublished) (recounting prior holding that the defendants could recover Rule 54(d)(1) costs where the court had granted summary judgment to them and declined to exercise supplemental jurisdiction).  We consider these cases persuasive.

Mr. Allen points to one case supposedly to the contrary, *North American Insurance Agency, Inc. v. Bates*, No. CIV-12-544-M, 2015 WL 1508030 (W.D. Okla. Mar. 31, 2015) (unpublished) (*Bates*).  In *Bates*, the district court entered judgment in favor of two defendants on all federal claims and some state claims against them, and declined to exercise supplemental jurisdiction over other state claims, dismissing them without prejudice.  The court observed that under Tenth Circuit authority, a district court "may properly exercise its discretion" to deny Rule 54(d)(1) costs "when the prevailing party was only partially successful." *Id.* at *2.  The court concluded that it was "speculative and premature" to determine entitlement to costs because "the merits of the entire controversy between plaintiffs and [the two] defendants . . . [had] not been completely decided." *Id.*

We do not find this nonbinding case persuasive for the principle Mr. Allen would have us glean from it—that a district court abuses its discretion by awarding Rule 54(d)(1) costs when entering judgment in favor of a defendant on some claims and declining to exercise supplemental jurisdiction over remaining state law claims against

19

that defendant. The court in *Bates* said only that it *could* decline to award costs in that circumstance, not that it was required to.[8]

In his second argument, Mr. Allen contends that awarding costs before the state court proceedings have concluded risks the possibility of a conflicting state court order that he "is the prevailing party on the same core facts but under separate theories of recovery." Aplt. Opening Br. at 11. In support, he analogizes this hypothetical scenario to the generally prohibited practice of claim-splitting. But there is no conflict between an

---

[8] The same can be said of another case Mr. Allen relies on, *AeroTech, Inc. v. Estes*, 110 F.3d 1523, 1526 (10th Cir. 1997), for the principle that a district court does not abuse its discretion in denying costs "when the prevailing party is only partially successful."

Mr. Allen points to two other cases in support of this argument, but each case is materially distinguishable. He first relies on *Iqbal v. Holder*, 693 F.3d 1189 (10th Cir. 2012), for the contention that remanding a case to another forum is not the sort of victory that results in the change of status *Buckhannon* requires. But *Iqbal* involved a district court's remand to an administrative agency so that the agency could determine the merits of an application for naturalization; the district court had said nothing about the merits of the application or granted any of the relief sought, and the remand order did not allow the petitioner a way to enforce the merits of his claim. *Id.* at 1194–95. Under those circumstances, we concluded that the petitioner was not a prevailing party under *Buckhannon*. *Id.* The district court here granted summary judgment to Mayor Lang on the merits of the federal claims, thereby granting Mayor Lang precisely the relief she sought. Declining to exercise supplemental jurisdiction over the state claims is not akin to the remand in *Iqbal*.

Next, Mr. Allen cites *Woodmen Accident & Life Insurance Co. v. Bryant*, 784 F.2d 1052 (10th Cir. 1986), for its statement that "unless the trial court—as part of its Rule 54(b) certification—directs taxing and apportionment of costs, the time for taxing costs begins to run only from the entry of what would ordinarily be a final judgment as to all parties and all issues," *id.* at 1057 (emphasis omitted). In that case, we concluded that taxing costs was premature upon entry of partial summary judgment because there remained a counterclaim to be adjudicated between the parties. *Id.* at 1057–58 & n.2. In this case, there are no remaining claims in federal court, and nothing in *Bryant* causes us to conclude that the district court abused its discretion in awarding costs here despite declining to exercise supplemental jurisdiction over the state claims.

adverse federal-court judgment on federal claims rendering a defendant the prevailing party in federal court, and a favorable state-court judgment on state claims rendering the plaintiff the prevailing party in state court. Mayor Lang has been awarded costs incurred in prevailing on the federal claims in federal court, and to the extent Oklahoma state courts permit cost awards to prevailing parties, Mr. Allen may be able to seek costs incurred in state court if he prevails on his state claims in that forum.

In his final argument, Mr. Allen posits that even if it is appropriate to deem Mayor Lang a prevailing party for Rule 54(d)(1) purposes, the amount of costs awarded should be limited to those solely attributable to the federal claims. In support he relies on *Fox v. Vice*, 563 U.S. 826 (2011). At the summary judgment stage in *Fox*, after the plaintiff conceded the invalidity of his § 1983 claims, the district court dismissed them with prejudice and declined to exercise supplemental jurisdiction over remaining state claims. *Id.* at 830. The district court then awarded the defendant attorney's fees for defending against the federal and state claims without separating the work done on the two sets of claims. *Id.* The *Fox* Court was asked to determine "[w]hat fees may be fairly attributed to frivolous claims under [42 U.S.C.] § 1988[,]" *id.* at 835, which allows a defendant to receive an award of attorney's fees if the plaintiff's § 1983 suit is "'frivolous, unreasonable, or without foundation,'" *id.* at 833 (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)). The Court held that § 1988 "allows a defendant to recover reasonable attorney's fees incurred because of, but only because of, a frivolous claim." *Id.* at 836. Although the nonfrivolous claims were the state claims over which the district court had declined to exercise supplemental jurisdiction, the Court made no

21

pronouncement, express or implied, bearing on whether a district court must similarly parse out Rule 54(d)(1) costs in the procedural posture we have in Mr. Allen's case. *Fox* is confined to the proper determination of an award of attorney's fees under § 1988 for defending frivolous § 1983 claims, a situation lacking here.

Moreover, the *Fox* court recognized that "the dispositive question is not whether attorney costs at all relate to a non-frivolous claim, but whether the costs would have been incurred in the absence of the frivolous allegation." *Id.* at 838. Hence, even if we were inclined to analogize *Fox*'s principles to this case, Mr. Allen would not benefit; the dispositive question would be whether Mayor Lang would have incurred the same costs even if there were no state claims, and Mr. Allen has implicitly conceded she would have by arguing that the cost of the federal claims are "equally related to the state tort claims," Aplt. Opening Br. at 15.

In sum, we conclude that Mr. Allen has failed to overcome the presumption that Mayor Lang should be awarded costs under Rule 54(d)(1), or to establish that the amount of costs should be limited to those solely attributable to defending the federal claims.

## III. CONCLUSION

The district court's judgment and its order awarding costs to Kay Lang are affirmed.

Entered for the Court

Jerome A. Holmes
Circuit Judge

22